UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CATHERINE RUELI, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 14-10319-MGM |
| BAYSTATE HEALTH INC. and BAYSTATE | * | |
| VISITING NURSE ASSOCIATION & | * | |
| HOSPICE, INC., | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTION TO REMAND TO STATE COURT
(Dkt. No. 12)

January 9, 2015

MASTROIANNI, U.S.D.J.

# I.  INTRODUCTION

Nurses ("Plaintiffs"), working for Baystate Health, Inc. and Baystate Visiting Nurses
Association and Hospice, Inc. (together "Defendants"), filed a complaint in Hampden County
Superior Court to recover unpaid wages for hours of overtime worked. Plaintiffs' and Defendants'
employment contract is memorialized in a Collective Bargaining Agreement ("CBA"), which, among
other provisions, sets forth a policy requiring employees request permission from Defendants prior
to working hours that would entitle them to overtime compensation.

In their complaint, Plaintiffs allege that they regularly must work additional hours in order to
finish their work. Plaintiffs do not, however, allege that they followed the CBA protocol for
requesting overtime. Plaintiffs assert that, since they worked these extra hours and Defendants have
not paid them, Defendants have violated MASS. GEN. LAWS ch. 149, § 148 ("ch. 149") and MASS.
GEN. LAWS ch. 151, § 1B ("ch. 151").

Defendants removed the case to this court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, alleging Plaintiff's claims are preempted by federal law. Plaintiffs now move to remand the case back to state court, arguing their claims are not preempted.

For the reasons stated herein, the court denies Plaintiffs' motion.

## II. PROCEDURAL HISTORY AND PLAINTIFFS' ALLEGATIONS

On December 11, 2013, Plaintiffs[1] filed a complaint in Hampden County Superior Court (Dkt. No. 8, State Court Record 1), specifically a "Class Action to recover unpaid wages and overtime that are owed to employees of Defendants."[2] (Dkt. 1-1, State Court Record 4.) Plaintiffs claim Defendants have violated ch. 149[3] by failing to pay Plaintiffs unpaid wages, and also that Defendants have violated ch. 151[4] by failing to compensate Plaintiffs for overtime hours worked. (Id. at 7.) Plaintiffs have requested a jury trial to resolve all of their claims.[5] (Id.)

Plaintiffs are employed as "visiting nurses." (Id. at 5.) In their complaint, they allege they have not been paid for all the hours they have worked. (Id.) Specifically, due to the "volume of work assigned to them, [Plaintiffs] are regularly required to work outside of their regularly scheduled shifts." (Id.) Plaintiffs explain that "this unpaid work frequently consists of computer work in

[1] The complaint identifies Plaintiffs as the following individuals: Catherine Rueli, Christine Clark, Edna Broadway, Edward Stankiewicz, Melissa Gower, Robin Hackett-Hill, Sharol Menard, Theresa Picard, and "others similarly situated, namely all other individuals who are, and who have been employed as nurses by Defendants who have no received all wages and overtime payments due to them." (Dkt. No. 1-1, State Court Record 4-5).

[2] Both Defendants are Massachusetts corporations with their principal offices in Springfield, MA. (Id. at 4.) It follows that, if this court has jurisdiction, it will be solely on the basis of a federal question.

[3] In relevant part, the statute states: "Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him to within six days of the termination of the pay period during which the wages were earned." MASS. GEN. LAWS ch. 149, § 148.

[4] In relevant part, this statute states: "Any employer or the officer or agent of any corporation who pays or agrees to pay to any employee less than the overtime rate of compensation required by section one A shall have violated this section and shall be punished or shall be subject to a civil citation or order as provided in section 27C of chapter 149, and each week in which such employee is paid less than such overtime rate of compensation and each employee so paid less, shall constitute a separate offense." MASS. GEN. LAWS ch. 151, § 1B.

[5] Plaintiffs have specifically requested that "this Court enter the following relief: (1) Certification of the case as a class action; (2) Restitution for all unpaid wages that are owed to the Plaintiffs; (3) Restitution for all overtime payments that are owed to the Plaintiffs; (4) Statutory trebling of all damages; (5) Attorneys' fees and costs; (6) Any other relief to which the Plaintiffs may be entitled." (Dkt. No. 1-1, State Court Record 7.)

preparation for a visit with a [patient], and computer work following up after a visit." (Id. at 6.) Since the work has been performed while Plaintiffs have been "logged onto [Defendants'] computer system," Plaintiffs contend that "Defendants are . . . aware of the work" which Plaintiffs perform "outside of their regularly scheduled shifts for which they are not compensated."[6] (Id.)

On February 13, 2014, the case was removed to this court. (Dkt. No. 1, Notice of Removal.) As grounds in support thereof, Defendants argue Plaintiffs' state-law claims are preempted by Section 301 of the Labor Management Relations Act ("§ 301") because the resolution of these claims depend, at least in part, upon the meaning of Plaintiffs' and Defendants' CBA. (Id. at 3.) See generally 29 U.S.C. § 185. Accordingly, Defendants asserted that Plaintiffs' state law claims cannot be resolved without interpreting the CBA to determine issues including: (1) whether additional wages are owed, (2) whether additional compensation provided by the CBA offsets any deficiency created by other uncompensated time, (3) how many compensable hours each employee worked, (4) whether an employee followed proper procedure in requesting payment for hours worked outside his or her regular shift, (5) whether such payment was "unreasonably withheld," and (6) the employee's regular rate. (Id. at 5.)

On March 17, 2014, Plaintiffs filed a motion to remand the case back to state court, asserting that removal is improper because interpretation of the CBA is not necessary to resolve their claims. On March 4, 2014, Defendants filed an opposition to Plaintiff's motion to remand (Dkt. No. 15.) On April 21, Plaintiffs filed a reply to that opposition (Dkt. No. 18.) After being rescheduled several times, a hearing was held on December 12, 2014.

## III.  ANALYSIS OF PLAINTIFFS' MOTION TO REMAND

---

[6] Though not relevant to the instant motion, Plaintiffs claim that they have exhausted their administrative remedies, as is evidenced by the fact that they have received a "right-to-sue letter" from the Attorney General's Office. (Id. at 6.)

Under the Doctrine of Complete Preemption, "if a federal cause of action completely pre-empts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily arises under federal law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987) (quoting Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 24 (1983)) (internal quotation marks and corresponding citation omitted). Therefore, "any claim purportedly based on . . . pre-empted state law is considered, from its inception, a federal claim." Caterpillar, Inc., 482 U.S. at 393. If one or more of a plaintiff's claims are preempted by federal law and are therefore removable to federal court, the entire case is removable. See Cavallaro v. UMass Mem. Healthcare, Inc., 678 F.3d 1, 5 (1st Cir. 2012).

"Section 301 preempts a state-law claim, whether founded upon the state's positive or common law, if a court, in passing upon the claim, would be required to interpret the [parties'] collective bargaining agreement."[7] Flibotte v. Pennsylvania Truck Lines, 131 F.3d 21, 26 (1st Cir. 1997). "In practice, [the preemption] test boils down to whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement." Id. If it does so depend, then there is federal jurisdiction to resolve the federal question and a defendant can remove to federal court a case initially filed in state court and purporting to make claims falling only under state law.

Once such a case has been removed, a party seeking remand has the burden of showing that it is not even plausible that a resolution of its claim would hinge on an interpretation of the CBA. See Flibotte, 131 F.3d at 26 (state law claim preempted by LMRA section 301 if it…"plausibly can

---

[7] Though not applicable to the instant motion, removal is also proper if an action alleges a breach of a duty that arises pursuant to a collective bargaining agreement. See 29 U.S.C. § 185 ("[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . ."); Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997).

be said to depend upon the meaning of" or "arguably hinges upon an interpretation of" the CBA); Cavallaro, 678 F.3d at 8. Plaintiff has not met that burden here.

Though the court is sympathetic to the Plaintiffs' position, the outcome of this motion is controlled by the First Circuit's holding in Cavallaro v. UMass Memorial Health Care, Inc. See id. at 2-9. In Cavallaro, the plaintiffs were nurses covered by a CBA that contained numerous provisions concerning different rates of pay in different instances, all of which were higher than the mandated rate under the applicable state statute. See id. The Cavallaro plaintiffs brought claims under ch. 149 and ch. 151, as well as various claims under state common law. See id. at 3. The First Circuit observed that ch. 149 requires an employer to pay wages owed to an employee within a fixed period, and that, "to succeed, an employee must, among other things, prove there are wages owed." Id. at 8. The court further explained: "determining what (if anything) is owed—an inevitable issue here— depends at least arguably on interpretations and applications of the CBA at issue." Id.

Similar to the instant Plaintiffs, the Cavallaro plaintiffs "insist[ed] that they [were] not raising any interpretive dispute about the CBA or the method of calculating wages, but only a factual dispute as to whether plaintiffs were paid" for additional, uncompensated time allegedly spent working. See id. The First Circuit did not accept this argument, and ultimately found that an interpretation of the CBA would be required because the evaluating court will need to construe and apply "the various 'peculiarities of industry-specific wage and benefit structures' embodied in the CBA." Id. (quoting Adames v. Exec. Airlines, Inc., 258 F.3d 7, 13 (1st Cir. 2001)); see also Hayes v. Aramark Sports, No. 08-10700, slip. op. at 6 (D. Mass. Mar. 30, 2009) (holding that, due to the "complexity of determining what actually is [plaintiffs'] regular rate of compensation," the evaluating court will necessarily have to interpret the parties' CBA).

Plaintiffs in the instant case attempt to distinguish Cavallaro by explaining that, here, Plaintiffs only assert that they have not been paid for all of the time that they have worked; and by

contrast, in <u>Cavallaro</u>, "hospital employees brought numerous diffuse, vague, and far-reaching state law claims . . . alleging that they have been denied compensation for work performed, for example during meal breaks, during training sessions, and before and after their shifts." (Dkt. No. 12, Pltf. Mem. 10 (citing <u>Cavallaro</u>, 678 F.3d at 2-3).) This is, however, a distinction without a dispositive difference. The instant case is governed by the <u>Cavallaro</u> holding because in both situations, "determining whether there are wages owed" will, at least arguably, "require construing and applying" a portion of the CBA. <u>See</u> <u>Cavallaro</u>, 678 F.3d at 8; <u>Flibotte</u>, 131 F.3d at 26.

Plaintiffs also argue that, since they are not seeking to enforce the threshold under the CBA, it need not be interpreted because Plaintiffs "are seeking only to enforce their state statutory right to collect overtime pay." (Dkt. No. 12, Pltf. Mem. 7.) As the First Circuit has explained, however, "[t]he interrelationship of the state claims and a CBA cannot be avoided merely by refusing to identify the CBA in the complaint and citing the well pleaded complaint rule." <u>See</u> <u>id.</u> at 5 (explaining that "[i]f a plaintiff's refusal to identify a CBA controlled, removal under section 301 could always be defeated by artful pleading."). For these reasons, Plaintiffs' argument—citing the well-pleaded complaint rule to support their contention that interpretation of the CBA can be avoided—is unavailing. (Dkt. No. 12, Pltf. Mem. 10 (citing <u>Caterpillar, Inc.</u>, 482 U.S. at 398-399).) <u>Contra</u> <u>Cavallaro</u>, 678 F.3d at 5 (rejecting approach used by Plaintiffs here).

## IV.  CONCLUSION

Given the controlling nature of <u>Cavallaro</u>, Plaintiffs' motion to remand (Dkt. No. 12) is hereby DENIED.

It is So Ordered.

           _/s/ Mark G. Mastroianni_____
           MARK G. MASTROIANNI
           United States District Judge